UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| H. RICHARD WINN, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 17-833 (JDB) |

## MEMORANDUM OPINION

Plaintiff H. Richard Winn brought this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, against defendant Department of Justice (DOJ) seeking documents responsive to three FOIA requests he submitted to the Federal Bureau of Investigation (FBI). The government has since released responsive documents to Winn but has withheld some materials as exempted from disclosure. Both parties filed cross-motions for summary judgment. For the reasons explained below, the DOJ's motion for summary judgment will be granted and Winn's cross-motion for summary judgment will be denied.

## BACKGROUND

Winn is a physician and neurosurgeon who served as the chairman of the Department of Neurological Surgery at the University of Washington School of Medicine from 1983 until 2002. Decl. of David M. Hardy ("Hardy Decl.") [ECF No. 15-2] ¶ 5. In 1999, FBI officials began investigating claims for medical services performed by the department's faculty that were submitted to Medicare and Medicaid. Plea Agreement at 4, United States v. H. Richard Winn, No. 2:02-cr-00235-RSL-1 (W.D. Wash. July 16, 2002), ECF No. 3. Winn was charged with

obstructing this investigation, and he ultimately pled guilty to that charge in 2002. Id. at 1, 16.

Thirteen years later, on March 30, 2015, Winn submitted a FOIA request to the FBI to obtain files to use in his memoirs. See Ex. A to Def.'s Mot. for Summ. J. ("2015 Request") [ECF No. 15-3] at 2;[1] Pl.'s P. & A. in Supp. of His Cross-Mot. for Summ. J. & Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Mot. & Opp'n") [ECF No. 16-1] at 2. He asked for "[his] own FBI files" and provided names under which the files might be found. 2015 Request at 2. He also included Form DOJ-361, which certified his identity so that the agency could release his own records to him. Id. at 4; see 28 C.F.R. § 16.3 (requiring requester seeking "records about himself" to verify his identity). Three days later, the FBI acknowledged receipt of the request and advised Winn that it had initiated a search for responsive records. Def.'s Stmt. of Undisputed Material Facts ("Def.'s Stmt.") [ECF No. 15] ¶ 2; Ex. B to Def.'s Mot. for Summ. J. [ECF No. 15-3] at 6.

In July 2015, the FBI informed Winn that it had "located approximately 4000 pages of records potentially responsive to the subject of [his] request," which it identified as "Winn, Herbert Richard." Ex. D to Def.'s Mot. for Summ. J. [ECF No. 15-3] at 10. It reminded Winn that 4000 pages was only an estimate, and that "some information may not be responsive to [his] subject" and "some of the information may be withheld in full pursuant to FOIA / Privacy Act exemption(s)." Id. In a separate letter, the FBI also advised him that processing of his request would be delayed because of the volume of the records and because the FBI would need to consult with or collect records from other FBI or agency offices. Ex. C to Def.'s Mot. for Summ. J. [ECF No. 15-3] at 8.

Eight months passed without any further information from the FBI. See Def.'s Stmt. ¶ 3;

---

[1] Defendant's exhibits are filed in three docket entries. Part 1 includes Exhibits A through the first portion of Exhibit H. See Ex. Pt. 1 [ECF No. 15-3]. The remainder of Exhibit H can be found in Exhibit Part 2. See Ex. Pt. 2 [ECF No. 15-4]. Exhibits I through N can be found in Exhibit Part 3. See Ex. Pt. 3 [ECF No. 15-5]. For ease of reference, the Court cites to the PDF pagination of Exhibit Parts 1, 2, and 3.

Pl.'s Mot. & Opp'n at 2. Winn then sent a second FOIA request to the FBI on March 22, 2016, again stating that he was "writing to obtain [his] own FBI files," and attaching Form DOJ-361. Ex. F to Def.'s Mot. for Summ. J. ("2016 Request") [ECF No. 15-3] at 16–18. In this request, he also explained that he was "seeking any and all files related to the investigation of the University of Washington School of Medicine in Seattle, WA . . . beginning in 1990." Id. at 16. Winn stated that he had "made the same request" one year prior. Id.

Another year passed, and on March 9, 2017, Winn submitted a third FOIA request to the FBI. Ex. H to Def.'s Mot. for Summ. J. ("2017 Request") [ECF No. 15-3] at 23. He again requested "[his] own FBI files," and explained that he was "seeking any and all files related to the investigation of the University of Washington School of Medicine in Seattle, WA . . . beginning in 1990." Id. at 24.

On May 5, 2017, Winn filed the instant lawsuit seeking the release of all records responsive to his three FOIA requests. Compl. [ECF No. 1] at 6. Two months later, the Record / Information Dissemination Section ("RIDS") of the FBI conducted a search for responsive records using the names Winn had provided and located one investigative file. Hardy Decl. ¶ 25. This file pertained to the relevant investigation into Winn, but also included information pertaining to other suspects in the investigation. Id. ¶¶ 25 & n.5. The FBI only processed records in the file that related to its investigation of Winn. Id. ¶ 25 n.5. In total, the FBI determined that 915 of the originally estimated 4000 pages were responsive to Winn's requests. Id. ¶ 4.

Between August 31, 2017, and December 29, 2017, the FBI released 619 pages of records in full or in part. Id. ¶¶ 4, 15–18. The FBI also withheld 296 pages in full, citing statutory exemptions that permit FOIA materials to be withheld because they were compiled for law enforcement purposes, identify confidential sources, are grand jury materials, or are personnel,

3

medical, or other personally-identifying materials. Id. ¶¶ 4, 32, 34–61 (citing Federal Rule of Criminal Procedure 6(e) and 5 U.S.C. §§ 552(b)(3), (6), (7)(C), (7)(D), (7)(E)).

The government then filed a motion for summary judgment asserting that it had conducted an adequate search for responsive records and had now produced all non-exempt, non-segregable records responsive to Winn's requests. Mem. of Law in Supp. of Def.'s Renewed Mot. for Summ. J. ("Def.'s Mot.") [ECF No. 15] at 1.[2] Winn responded in opposition and filed a cross-motion for summary judgment. In doing so, he conceded that the FBI's search for the investigative file was adequate and that it had properly invoked applicable FOIA exemptions to withhold information. See Pl.'s Mot. & Opp'n at 1, 3 & n.1. However, he argued that he actually sought all records within the investigative file, not just his records, and that the FBI improperly narrowed the scope of his requests by excluding the majority of the records within the file. Id. at 3–6. He also contended that although the FBI's search for the investigative file was adequate, the FBI did not establish that it had conducted an adequate search for responsive records within the investigative file. Id. at 6 n.4. Finally, Winn argued that that the government did not establish that it had released all reasonably segregable non-exempt information. Id. at 6–7. The parties' motions are now fully briefed and ripe for consideration.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of the record,

---

[2] Although the government titled its brief "Renewed Motion for Summary Judgment," this is the government's first and only motion for summary judgment.

4

including affidavits or declarations, which it believes can demonstrate the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1)(A); see Celotex, 477 U.S. at 323.

In determining whether a genuine issue of material fact exists, the Court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the motion.'" Scott v. Harris, 550 U.S. 372, 378 (2007) (citation and alteration omitted). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Summary judgment is warranted if the plaintiff has failed to 'present affirmative evidence . . . to defeat a properly supported motion for summary judgment.'" Durant v. D.C. Gov't, 875 F.3d 685, 696 (D.C. Cir. 2017) (quoting Liberty Lobby, 477 U.S. at 257), cert. denied sub nom. Durant v. District of Columbia, 138 S. Ct. 2608 (2018).

In FOIA cases, a district court reviews the record de novo to determine whether summary judgment is warranted, and the agency bears the burden of establishing that it has complied with its obligations under FOIA. 5 U.S.C. § 552(a)(4)(B); Roseberry-Andrews v. Dep't of Homeland Sec., 299 F. Supp. 3d 9, 18 (D.D.C. 2018). The court may grant summary judgment in favor of the agency only after the agency has established "that it has fully discharged its disclosure obligations under FOIA." Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1350 (D.C. Cir. 1983).

## **DISCUSSION**

The only issues before the Court are whether (1) the FBI appropriately identified the scope of Winn's request as seeking records relating to him, rather than as seeking the entire file pertaining to the health insurance fraud investigation; (2) whether the FBI conducted an adequate search for responsive documents within the investigative file; and (3) whether the FBI has demonstrated that

5

it complied with its obligation to disclose reasonably segregable material. The Court will consider each in turn.

### I. The Scope of Winn's Request

Winn asserts that the FBI improperly excluded from the scope of its review files pertaining to the FBI's investigation of the University of Washington School of Medicine that were responsive to his request. Pl.'s Mot. & Opp'n at 5. Although his first FOIA request in March 2015 only described "[his] own FBI files," 2015 Request at 2, Winn asserts that he later clarified in his subsequent two FOIA requests that he was requesting all files relating to the University of Washington School of Medicine investigation, Pl.'s Mot. & Opp'n at 5. Winn claims that the FBI had further notice of the intended scope of his requests when Winn's counsel informed DOJ in November 2017 and January 2018 that Winn sought the entire investigative file, not just his own records. Decl. of Scott A. Hodes ("Hodes Decl.") [ECF No. 16-3] ¶¶ 4–5.

Under FOIA, agencies must construe record requests liberally in favor of disclosure, Nat. Mag., Wash. Bureau v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995), but those requests must "reasonably describe[] such records," 5 U.S.C. § 552(a)(3)(A). Agencies are not "required to divine a requester's intent," nor must they "expand their searches beyond 'the four corners of the request.'" Am. Chemistry Council, Inc. v. U.S. Dep't of Health and Human Servs., 922 F. Supp. 2d 56, 62 (D.D.C. 2013) (citation omitted).

Here, Winn's requests were clear: he sought his "own FBI files." 2015 Request at 2; 2016 Request at 16; 2017 Request at 24. In his initial request, Winn never mentioned the University of Washington investigation and stated only that he sought his own files. 2015 Request at 2. Then, in 2016, he asserted that he was making "the same request" as he had the prior year. 2016 Request at 16 (emphasis added). Both the 2015 and 2016 requests also included Form DOJ-361 certifying

6

his identity, which suggested that he was seeking only his own records. 2015 Request at 4; 2016 Request at 18. Indeed, even in his complaint, Winn has described his FOIA requests as seeking records "concerning himself." Compl. ¶ 12; see also id. ¶¶ 17, 19 (stating he sought "records pertaining to himself").

Even construing the three FOIA requests liberally, their most natural reading is that Winn sought the full set of all records pertaining to him "while nonetheless evincing a heightened interest in a specific subset" of his records relating to the University of Washington investigation. LaCedra v. Exec. Office for U.S. Att'ys, 317 F.3d 345, 348 (D.C. Cir. 2003). Although he stated in his 2016 and 2017 requests that he was "seeking any and all files related to the investigation of the University of Washington School of Medicine in Seattle, WA," he first asserted that he was seeking just his own files. 2016 Request at 16; 2017 Request at 24. Hence, Winn only "reasonably described" his own records, and clarified that he particularly sought his records relating to the investigation. See id.; see also Suppl. Decl. of David M. Hardy, Ex. 1 to Def.'s Opp'n & Reply ("Hardy Suppl. Decl.") [ECF No. 20-1] ¶ 4 ("[T]he FBI interpreted this additional language to mean that Plaintiff sought his records within the FBI's investigation in the University of Washington."); Ex. B to Def.'s Mot. at 6 (identifying subject of Winn's requests as "Winn, Herbert Richard"); Ex. D to Def.'s Mot. at 10 (same).[3]

---

[3] Although Winn insists that the FBI "clearly found" all of the records in the University of Washington investigation file to be responsive to his requests, Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. ("Pl.'s Reply") [ECF No. 21] at 5, the FBI only stated that the records in the investigative file were "potentially responsive," Ex. D to Def.'s Mot. at 10. This does not suggest that all records in the file were in fact responsive. Nor is it relevant, as Winn contends, that the FBI grouped the three requests at issue in this case with a separate FOIA request, which is not at issue in this case, that Winn made for documents concerning another investigation subject, Albert Harris. See Pl.'s Mot. & Opp'n at 5 (citing Ex. I to Gov't's Mot. ("Aug. 2017 Letter") [ECF No. 15-5] at 3). Even if the FBI determined that some records would be responsive to both sets of requests, this does not mean that the agency understood that Winn had requested the entire investigative file.

That Winn eventually informed the FBI that he actually intended to seek all records relating to the investigation, including those that do not pertain to him, does not change the scope of his requests. He only told the DOJ that he wanted the full investigative file after the FBI had searched for records responsive to his original requests and had begun to produce documents. See Hodes Decl. ¶¶ 4–5. At that point, the FBI had no "obligation to search anew based upon a subsequent clarification." Kowalczyk v. Dep't of Justice, 73 F.3d 386, 388 (D.C. Cir. 1996); see also Williams v. Ashcroft, 30 F. App'x 5, 6 (D.C. Cir. 2002) (per curiam) (holding agency "was not required to search for or provide" materials that were not included in plaintiff's initial FOIA request). The FBI's only obligation was to disclose non-exempt records responsive to Winn's original requests that it had located through an adequate search. 5 U.S.C. § 552(a)(3)(A), (C).

## II. The FBI's Search for Responsive Documents

The FBI has satisfied its obligation to conduct an adequate search. Under FOIA, an agency must make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). It may demonstrate that its search was reasonable through supporting affidavits that are "'relatively detailed[,]' . . . nonconclusory and submitted in good faith." Morley v. CIA, 508 F.3d 1108, 1116 (D.C. Cir. 2007) (citation omitted). "If the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Kowalczyk, 73 F.3d at 388 (citation and alteration omitted).

Although Winn concedes that the FBI's search of its Central Records System ("CRS") for the investigative file was adequate, he challenges the adequacy of the FBI's search of the investigative file itself. But Winn does not contest any of the FBI's representations or "provide 'countervailing evidence' as to the adequacy of the agency's search." Iturralde v. Comptroller of

8

Currency, 315 F.3d 311, 314 (D.C. Cir. 2003) (citation omitted). Instead, his argument once again rests on his assertion that the FBI improperly narrowed the scope of his requests when conducting its search. Winn contends that the FBI's description of its review of the investigative file was insufficient because it did not identify the scope of responsive records, and he argues that the scope should have included "all documents pertaining to the Department of Neurology" and to the "overall investigation itself." Pl.'s Reply at 5–6; see Pl.'s Mot. & Opp'n at 6 n.4.

But the Court has already found that the FBI's interpretation of the scope of Winn's request—records concerning "Winn, Herbert Richard" and his provided aliases—was reasonable. The agency was "not obliged to look beyond the four corners of the request" when searching for responsive documents. Kowalczyk, 73 F.3d at 389. Nor was it obliged to produce records from the investigative file that were not responsive to his requests. Pub. Investors Arbitration Bar Ass'n v. SEC, 930 F. Supp. 2d 55, 72 (D.D.C. 2013) ("[I]t is elementary that an agency's decision to withhold non-responsive material is not a violation of FOIA."), aff'd on other grounds, 771 F.3d 1 (D.C. Cir. 2014).[4]

In any event, the FBI did describe its search for responsive records. The FBI submitted declarations from RIDS Section Chief David M. Hardy that explain in detail the steps the FBI took to search for responsive documents. After describing the FBI's CRS and explaining how index searches are generally conducted, Hardy stated that the FBI conducted an index search in the CRS using the versions of Winn's name that he had provided. Hardy Decl. ¶¶ 19–25. Hardy confirmed that this search was of "the only records systems likely to maintain responsive records, and that no other records systems are likely to maintain responsive records." Id. ¶ 26. The search returned

---

[4] Of course, an agency may not redact non-responsive information from non-exempt responsive records. Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review, 830 F.3d 667, 677 (D.C. Cir. 2016). But there is no allegation here that the FBI redacted non-responsive portions of responsive documents; the FBI only withheld entirely non-responsive documents that were located within the investigative file.

9

one file pertaining to the University of Washington investigation. Id. ¶ 25. However, because the investigation involved multiple suspects, Winn was only "one of many subjects indexed as a main subject" of the file. Id. ¶ 25 n.5. The FBI therefore processed records within the file that "related to [its] investigation of [Winn]," and omitted records that pertained only to other subjects and hence were not responsive to Winn's requests. Id.

This description is sufficiently detailed for the Court to conclude that the FBI's search for responsive records, including its search of the investigative file, was adequate. True, the declaration's description of the agency's review of the file could have been more detailed. For example, it could have reiterated that the FBI deemed a particular document to be responsive if the record included one of the search terms, i.e., variations of Winn's name. But an affidavit need not "set forth with meticulous documentation the details of an epic search for the requested records." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). And the agency's criteria for evaluating whether a record was responsive to Winn's request was explained to Winn when the agency released the first set of documents to him: a record within the file was deemed unresponsive "if no information about [his] subject"—i.e., H. Richard Winn—"was in the body of the document itself." Aug. 2017 Letter at 3. Any inadequacy of the description of the FBI's search is "no more than marginal and does not render the grant of summary judgment inappropriate." Perry, 684 F.2d at 127.

### III. Release of Reasonably Segregable Information

Finally, Winn contends that the FBI has not established that all reasonably segregable, non-exempt information has been released. Under FOIA, "[a]ny reasonably segregable portion of a record" must be released after exempt information has been redacted. 5 U.S.C. § 552(b). The agency must "show with 'reasonable specificity' why the documents" it has withheld "cannot be

further segregated." Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996) (citation omitted). "In determining whether the FBI has met this obligation, it is 'entitled to a presumption that it complied with the obligation to disclose reasonably segregable material,'" which must be rebutted by the requester. Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013) (citation and alteration omitted).

Here, the Vaughn index and three affidavits submitted by the agency describe in sufficient detail why the information the FBI withheld cannot be further segregated. The FBI conducted a page-by-page review of each document to identify non-exempt information that could be released. Hardy Suppl. Decl. ¶ 6. A page was withheld in full only when the FBI determined that any non-exempt information was "inextricably intertwined with protected personal information" and that "[p]roviding additional information would disclose only incoherent words and phrases divorced from context, or meaningless pieces of information." Id. ¶ 10. This is sufficient to discharge the agency's obligation. See, e.g., Touarsi v. U.S. Dep't of Justice, 78 F. Supp. 3d 332, 350 (D.D.C. 2015) ("It is settled law . . . that an agency need not segregate and disclose 'disjointed words, phrases, or even sentences which taken separately or together have minimal or no informational content.'" (citation omitted)).

Winn has not submitted any evidence to rebut the FBI's sworn assertions. Instead, he appears to challenge only the FBI's failure to review and release non-responsive records from the investigative file. See Pl.'s Reply at 7.[5] But, as discussed above, the FBI was not required to search for, process, or release records that were not responsive to Winn's requests. Hence, the

---

[5] In his cross-motion and opposition brief, Winn also asserted that other agencies who reviewed the records did not make segregability findings. Pl.'s Mot. & Opp'n at 6. As the government explained, the FBI merely consulted with other agencies regarding information within the records and the FBI alone made all final segregability determinations. Def.'s Opp'n to Pl.'s Cross-Mot. for Summ. J. & Reply in Supp. of Mot. for Summ. J. [ECF No. 19] at 8; see also Hardy Decl. ¶¶ 70–74. Winn did not respond to the government's explanation in his reply.

Court finds that the FBI has established that it has released all reasonably segregable, non-exempt information.

**CONCLUSION**

For the foregoing reasons, the Court will grant [15] the DOJ's motion for summary judgment and deny [16] Winn's cross-motion for summary judgment. A separate order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: February 6, 2019